**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Terrence Michael KISSANE, Defendant-**
**Appellant.**

**No. 71–1711.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 17, 1972.

Decided May 22, 1973.

---

William G. Taffe, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Stephen J. Cloud, William T. Huyck, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and GRANT, District Judge.[1]

FAIRCHILD, Circuit Judge.

This is an appeal from sentence on conviction of five counts charging activity with methamphetamine hydrochloride, a "depressant or stimulant drug" under 21 U.S.C. § 321(v)(2). Appellant does not contest the fact that he delivered to Agent Tejan 1 gram of the drug October 28, 1968, another 1.176 grams earlier on October 31, and another 101.87 grams later that day, which he unlawfully manufactured and possessed. In return for the drugs appellant expected Agent Tejan to furnish various chemical raw materials for further manufacture, which were not readily obtainable through ordinary channels.

The issues on appeal relate primarily to appellant's defense of insanity. After conviction, appellant was provisionally sentenced for study and report, under 18 U.S.C. § 4208(b). Ultimately, appellant was placed on probation for 5 years, with the first 6 months to be spent in residence at the Chicago Community Treatment Center.

The issues and our disposition of them are as follows:

(1) *Sufficiency of proof of sanity.* Appellant produced substantial proof that he was mentally ill in October, 1967 and at the time of the offenses. The diagnosis by Dr. Gradolph in 1967 was depressive reaction with a manic or hypomanic defense against a psychotic depression. There was also expert testi-

---

1. District Judge Grant of the Northern District of Indiana is sitting by designation.

mony which would support a finding that he suffered from amphetamine psychosis, resulting from extended injection of high doses of amphetamine. There was testimony of members of appellant's family and friends concerning his bizarre behavior and hallucinations, although, under the circumstances, the jury may well have discounted the claims to some degree, and need not have believed that the reported incidents were close in time to the October, 1968 offenses.

Dr. Gradolph testified in answer to a hypothetical question that the person described must have been suffering from a mental disease; it would not affect his knowledge of the wrongfulness of his acts as much as his ability to act on the basis of the knowledge; he would not have a substantial capacity to conform his conduct to the requirements of the law; his need for the drug would be overwhelming. This and other expert testimony, in combination with testimony supporting the facts assumed in the question, would tend to establish the defense of insanity.

There was, however, testimony that appellant made very high quality meth-amphetamine hydrochloride; that he learned the sophisticated process by studying chemistry abstracts which he obtained from the library; that he had assembled the required laboratory equipment. Agent Tejan observed appellant for many hours October 28 and 31. The agent observed no bizarre conduct, fatigue, or tremors, and there was no conversation about hallucinations. Appellant talked at length and sensibly about chemistry. He was cautious in his dealings with the agent. The agent did not think appellant was suffering from a mental disease nor lacked capacity to appreciate the wrongfulness of his acts or to conform his conduct to the requirements of the law.

The jury heard appellant testify quite vaguely about his ventures in business, where he obtained the money he needed, and the transactions he had had involving chemicals and drugs. Within rea-sonable limits, the jury could decide for itself whether this was deliberate prevarication or a manifestation of illness. His testimony indicated he knew there were laws against drugs, based on the fact that people sometimes steal and commit violent acts to obtain drugs, but that he felt they did not apply here because he was not hurting anybody.

Appellant testified that a month or so before the event, he abstained from amphetamines for as long as a week. On that hypothesis, Dr. Parzen, called by the government, testified that the degree of dependence was negligible. Dr. Gradolph testified that on that basis he would not be sure the need was irresistible. Dr. Gradolph also testified that appellant might have been able to cease manufacturing the drug, but not the use of it. Assuming rational negotiation concerning the exchange of chemicals for the drug, Dr. Parzen thought appellant could tell the difference between right and wrong, and could conform his conduct in general to the law, although he might not be able to conform to the law against drugs.

"[I]n view of the complicated nature of the decision to be made—intertwining moral, legal, and medical judgments—it will require an unusually strong showing to induce us to reverse a conviction because the judge left the critical issue of criminal responsibility with the jury." King v. United States, 125 U.S.App.D.C. 318, 372 F.2d 383, 389 (1966); Gaskins v. United States, 133 U.S.App.D.C. 288, 410 F.2d 987, 991 (1967).

We think the evidence presented a jury question on the defense of insanity, and are unable to say that "reasonable men must necessarily possess a reasonable doubt as to defendant's sanity." See United States v. Westerhausen, 283 F.2d 844, 852 (7th Cir., 1960).

■ (2) *Admission of a recent conviction of felony.* On cross-examination of appellant, the government brought out, over objection, that on July 6, 1970 appellant pleaded guilty to "bailjump-

ing" (18 U.S.C. § 3150). It seems conceded that the circumstances made it a felony. Appellant argues that the district court abused its discretion. Appellant relies on our language in United States v. McCarthy, 445 F.2d 587, 591 (7th Cir., 1971), that the Proposed Rules of Evidence be used as guidelines, and on (3) of Rule 609(a) of the 1971 Revised Draft, 51 F.R.D. 315, 391. Under (3) a prior conviction was not to be admitted if "the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." (3), however, does not appear in Rule 609(a) in the form prescribed by the Supreme Court November 20, 1972, and transmitted to Congress. The effectiveness of the Rules so transmitted is suspended pending legislative approval. P.L. 93–12, March 30, 1973, 87 Stat. 9. But even if the district court had the discretion described in (3), we could not say it was abused here.

 (3) *Exclusion of evidence of mental condition in 1970.* The criminal activity occurred October 28 and 31, 1968; the trial December 9, 1970. The district court excluded evidence of mental condition of appellant during 1970.

One of the excluded items was an order of the U. S. District Court for the Southern District of California, entered March 5, 1970 in a criminal proceeding against appellant. It recited. a finding that appellant was "not capable of understanding the proceedings against him and not able to assist in own defense and presently insane." Standing alone the brief recitation in the order would be of limited usefulness, and it would be difficult to say that rejection was an abuse of discretion.

Other evidence offered and rejected should, however, have been received, notwithstanding the lapse in time. See United States v. Alden, 476 F.2d 378 (7th Cir., 1973) page 383.

Appellant was examined in October, 1970 by Dr. Boyd, a psychiatrist, and in early December by Dr. Zaks, a psychologist, to whom he was referred by Dr. Boyd. Although these experts answered hypothetical questions, they were not permitted to state nor take into consideration their 1970 diagnoses. Dr. Zaks was not permitted to state his interpretation of the outcome of the tests he administered. The report of Dr. Zaks, accompanying the offer of proof, stated that appellant "is in a state of personality disorganization characterized by a paranoid schizophrenic delusional system", with signs of possible suicidal tendencies, and recommendations for hospitalization and prolonged psychiatric after care.

It is clear, of course, that the critical dates as of which the jury must determine appellant's mental condition and capacity were in October, 1968. In this case there were diagnoses of mental illness one year before and two years after, with the criminal activity occurring during the intermediate progression of appellant's mental illness. We think that under the circumstances shown in this record the appellant had the right to have both sets of diagnoses before the jury, notwithstanding the lapse in time.

We conclude that there must be a new trial. The judgment is reversed and the cause remanded for a new trial.