**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Hardeman JACKSON,
Defendant-Appellant.**

**No. 75–2129.**

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1976.
Decided Sept. 24, 1976.

William J. Stevens, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., John L. Sullivan, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, SPRECHER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-Appellant (hereafter referred to as defendant) Hardeman Jackson was convicted for assaulting a postal employee in violation of 18 U.S.C. § 111. Defendant raises the following questions on appeal: whether the defendant's right to a speedy trial was violated; whether statements made by the Government during closing argument require a new trial; whether the trial court erred in refusing to submit a special interrogatory to the jury; whether the court below improperly limited the scope of voir dire; and whether the evi-

dence was sufficient to prove defendant's sanity beyond a reasonable doubt.

The facts in this case briefly are as follows:

On the morning of November 21, 1974, at 8:30 or 9:00 a. m., defendant visited the Main Post Office Building in response to a Postal Service notice informing him of available jobs in the Postal Service. Olivia Batteast, an employee of the Post Office, informed defendant that he needed a particular form for veterans before he could be appointed as a postal employee. Ms. Batteast suggested that defendant could procure this form from the Veterans' Administration Office. Defendant then left Ms. Batteast's office.

Later that day defendant returned to Ms. Batteast's office and told her that it would take some time for the Veterans' Administration to obtain the form. Ms. Batteast then explained that this was a temporary appointment and that Jackson would be called again when his grade was reached. Jackson stated, "That means that you are not going to give me the job." Ms. Batteast replied, "I don't make the rules and regulations, I just have to follow them so I can't appoint you without having the proper forms."

Defendant then pulled out a gun and shot Ms. Batteast above the right eye. Defendant escaped down the corridor outside Ms. Batteast's office and discarded the gun and shoulder holster as he ran.

The parties stipulated at trial that the gun which the Government introduced in evidence was the weapon with which Defendant Jackson shot Olivia Batteast. (Gov. Ex. 8)

Defendant was arrested 23 hours later in Wilson, Kansas.

At trial defendant relied solely on the defense of insanity.

## I.

### Speedy Trial Allegations

After discharge of the jury, defendant moved for Judgment of Acquittal on the grounds that his trial was unnecessarily delayed in violation of his Sixth Amendment Right to a Speedy Trial. On appeal, defendant asserts that the district court should have allowed his Motion for Judgment of Acquittal.

The following is a brief summary of the time sequence and events leading up to the beginning of defendant's trial.

Defendant was arrested on November 21, 1974, for allegedly committing the crime in question. On March 20, 1975, defense counsel moved for an order pursuant to 18 U.S.C. § 4244 directing a psychiatric examination of defendant which was allowed on that date. Pursuant to the court's order, Dr. Mark Slutsky conducted an examination of defendant on April 4 and April 9, 1975.

In his report filed on April 15, 1975 (Tr. 139), Dr. Slutsky concluded that defendant was competent to stand trial, but was temporarily insane at the time of the crime.

The Government, on May 16, 1975, moved pursuant to 18 U.S.C. § 4244 for an order directing the psychiatric examination of defendant by Dr. Werner Tuteur. On May 30, 1975, the court granted the Government's motion and ordered the second psychiatric examination of defendant. Dr. Tuteur examined defendant on August 2, 1975, and concluded that defendant was not insane at the time of the crime.

Defendant's trial began on November 10, 1975. The jury returned with a verdict of guilty on November 13, 1975.

From the time of his arrest through commencement of trial defendant was in jail.

Relying on analysis in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), defendant asserts that he has been deprived of his right to a speedy trial. Defendant points out that the Government has not offered an explanation for the long delay of approximately one year between arrest and trial. Defendant also asserts that from April 15, 1975, the date on which Dr. Slutsky filed his report, defendant was ready for trial. Defendant states that a

letter[1] from defendant to Judge Decker dated October 6, 1975, should be construed as a demand for trial and an assertion of defendant's right to a speedy trial. Finally, defendant asserts that he has suffered prejudice due to the delay between Dr. Slutsky's examination and Dr. Tuteur's examination. According to defendant, the effect of this delay was that a physical reaction indicative of mental disease which was observed by Dr. Slutsky was no longer in existence at the time of Dr. Tuteur's examination.

In response, the Government contends that the allegedly prejudicial delay between the two psychiatric examinations was not excessive. First, the Government claims that delay resulting from conducting psychiatric examinations to determine mental condition at the time of the crime is not usually considered in a speedy trial context. In addition, the Government asserts that the 31-day delay (April 15, 1975, to May 16, 1975) before filing its motion for psychiatric examination of defendant was reasonable in light of the time needed for 1) review of Dr. Slutsky's report, 2) determining whether a second examination was needed, 3) selection of a second psychiatrist, and 4) drafting and filing a motion. Similarly, the Government asserts that the 64-day delay following the district court's approval of the Government's motion for a second examination of defendant (May 30, 1975, to August 2, 1975) resulted from Dr. Tuteur's heavy schedule. The Government also argues that the claimed prejudice allegedly suffered by defendant due to the delay between the two examinations is only speculative. Finally, the Government points out that defendant's letter dated October 6, 1975, was written long after the claimed prejudice arose and did not refer to prejudice arising from delay in holding the second examination.

For the following reasons we agree with the Government that defendant has not been deprived of his right to a speedy trial.

The right to a speedy trial is a "vague concept," incapable of precise definition. Thus, "inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case . . . ." *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972). The Court in *Barker* identified the following four factors which should be assessed in determining whether a defendant has been deprived of his right to a speedy trial: length of delay, reason for delay, the defendant's assertion of his right, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. 2182. We will deal with each of the above four factors separately.

*Delay*

■ An initial question which must be addressed before deciding the weight to be given to the delay in a balancing of factors is what is the actual duration of the delay. A measurement of the duration of the delay is important since the longer the delay, the heavier the weight to be given it in the balance:

It is manifest that prejudice, always a difficult thing to ascertain, must, at some point, be presumed to result from an inordinate delay in bringing a defendant to trial. Exactly where that point lies on the spectrum of pretrial delay is uncertain, but it is clear that the longer the

1. The text of the letter is as follows:

Honorable Judge Decker:

I write this letter as a plea for enlightenment. I have no set date to appear in court and the last time I was in court was 6–22–75, over 3 months ago. I know I am awaiting trial, but what's happening to me in the mean time?

I have already taken 2 psychiatric exams and received no response. If the next procedure is trial, I wish a "speedy" trial, because being locked up with all these people I must face daily is surely driving me insane. There is a great indifference that exists between me and all the rest of them. After all, I am religious and a devout muslim. And most important of all, not responsible for the crime I am charged with.

I receive absolutely no response from my attorney and this is the reason I am writing you. Please enlighten me to the procedures of my case. All will be greatly appreciated. Thanking you in advance, I remain

Most Sincerely

Hardeman Jackson

delay, the heavier the weight to be given it in the balance. *United States v. Macino,* 486 F.2d 750, 752 (7th Cir. 1973).

"[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused.'" *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). A defendant can become an "accused" when "actual restraints [are] imposed by arrest." 404 U.S. at 320, 92 S.Ct. at 463; *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1974). The delay in the present case, therefore, runs from the time of defendant's arrest on November 21, 1974, to the beginning of trial on November 10, 1975.

A certain amount of prejudice must be presumed to flow from the approximately one year delay between arrest and trial. *United States v. DeTienne,* 468 F.2d 151, 156 (7th Cir. 1972), *cert. denied* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274. Thus, there is necessity for inquiry into the other factors that go into the balance. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182; *United States v. Fairchild,* 526 F.2d 185 (7th Cir. 1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1682–83, 48 L.Ed.2d 186. However, the duration of the delay alone does not establish a denial of speedy trial since there is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker,* 407 U.S. at 514, 92 S.Ct. 2182; *DeTienne,* 468 F.2d at 156–157.

*Explanation for Delay*

*Barker* is instructive with regard to the weight to be assigned the Government's explanation for delay:

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. 407 U.S. at 531, 92 S.Ct. at 2192.

The Government has failed to offer an explanation for the period of time running from the date of arrest (November 21, 1974) to the date on which Dr. Slutsky filed his report (April 15, 1975). However, an examination of the record for this time period demonstrates that the passage of time was largely attributable to defendant.[2] In addition, defendant has not alleged prejudicial effects from the passage of time prior to April 15, 1975.

The Government did offer an explanation for the portion of delay running from the date on which Dr. Slutsky submitted his report (April 15, 1975) to the date on which Dr. Tuteur examined defendant (August 2, 1975). As indicated above, the Government states that the delay in question resulted largely from time required for analysis of Dr. Slutsky's report and arranging for a second examination. This explanation offers a "neutral reason" for this portion of the delay and, as such, "should be weighted less heavily." *Barker,* 407 U.S. at 531, 92 S.Ct. 2182.

The Government has failed to give an explanation for the period of time running from August 2, 1975, to the date of trial. Failure to account for delay may be weighed against the prosecution. *United*

2. For example, an examination of the record demonstrates the following: 1) The indictment was filed on January 23, 1973; 2) defendant appeared in court without counsel on January 30, 1975; 3) on February 11, 1975, the court appointed the Federal Defender to represent defendant for purposes of arraignment and plea; 4) counsel was appointed to represent defendant on February 12, 1975; 5) defendant was given 10 days additional time to file pre-trial motions; 6) defendant's motion for psychiatric examination of the defendant was filed and approved on March 20, 1975; and 7) on April 15, 1975, Dr. Slutsky submitted his report to the court.

*States v. Lockett,* 526 F.2d 1110 (7th Cir. 1975); *United States v. Scherer,* 523 F.2d 371 (7th Cir. 1975), *cert. denied* 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315. The defendant, however, has not asserted that prejudice arose from the passage of this period of time. In addition, it was not until October 6, 1975, that defendant complained of delay.

The absence of explanation by the Government for this portion of the delay is not crucial since the period of time was not extreme.

### Assertion of Right

Defendant contends that he asserted his right to a speedy trial in his letter dated October 6, 1975, to Judge Decker.

As the court pointed out in *DeTienne,* it is difficult to assess the importance of defendant's failure to assert at an earlier date his right to a speedy trial:

> Although in *Barker* the Supreme Court finally put to rest the demand-waiver rule, "[t]his does not mean, however, that the defendant has no responsibility to assert his right." *Id.* [407 U.S.] at 528, 92 S.Ct. at 2191. In making the defendant's assertion or failure to assert his right one factor to be thrown into the balance, whose weight is dependent upon the surrounding circumstances, the Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. 468 F.2d at 157.

Defendant's position is also rendered more difficult by the fact that he asserted his desire for a speedy trial only once.

In addition to the late date of his letter, the Government also questions the relevance of the letter to the prejudice alleged by defendant. The Government correctly points out that the letter refers solely to the effects of incarceration and does not refer to the allegedly prejudicial delay between examinations.

The fact that neither defendant nor his counsel made a contemporary objection relating to the prejudice asserted on appeal does not, however, in this case render defendant's position less viable. If, as suggested, defendant was manifesting physical symptoms indicative of mental illness which disappeared over a period of time, this court cannot assume that defendant was sophisticated enough to be aware of that fact and thereby regard defendant's failure to contemporaneously object as indicative of lack of prejudice.

It is apparent from the letter dated October 6, 1975, that, at least in a general way, defendant was asserting a desire for a speedy trial. Therefore, defendant's assertion of right, however tardy, must be placed into the balance.

### Prejudice

Delay of a trial inevitably carries the threat that a defendant will thereby suffer prejudice. The ability of the Government to successfully present its case is equally susceptible to prejudice from delay. *Barker,* 407 U.S. at 521, 92 S.Ct. 2182; *United States ex rel. Little v. Twomey,* 477 F.2d 767, 771 (7th Cir. 1973), *cert. denied,* 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94. The relevant inquiry for this court is "not so much with the inherent possibility of prejudice in the general sense as with whether there was specific prejudice to [defendant] in his defense." *Twomey,* 477 F.2d at 771.

The Court in *Barker* offers the following guidelines for inquiry into prejudice:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense

witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown. 407 U.S. at 532, 92 S.Ct. at 2193.

This court recognizes that anxiety and stigma inevitably attach to arrest and indictment. *United States v. Macino,* 486 F.2d 750 (7th Cir. 1973); see *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Allegations of anxiety and depression alone, however, do not result in a constitutional violation. *United States v. Annerino,* 495 F.2d 1159, 1163–1164 (7th Cir. 1974); *United States v. Jackson,* 508 F.2d 1001, 1004 (7th Cir. 1975). In the present case defendant did not make even a conclusory allegation of emotional stress.

Although defendant's pretrial incarceration for approximately one year supports a presumption of prejudice, such prejudice "unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other factors than was made here, does not alone make out a deprivation of the right to [a] speedy trial." *DeTienne,* 468 F.2d at 158.

The central question, then, is whether the defense function was tangibly impaired. Defendant asserts that he suffered prejudice from the delay between the psychological examinations of Dr. Slutsky and Dr. Tuteur due to the disappearance of physical symptoms indicative of mental illness. However, the analysis and conclusions by both Dr. Slutsky and Dr. Tuteur were a matter of opinion and speculation. As Dr. Tuteur testified:

. . . the entire issue remained speculative anyhow since I was not present and did not examine him during or immediately after the felony, and so a reasonable time interval—and this number of

months, in my opinion, is reasonable—really is not too decisive in reaching such a speculative opinion. (Tr. 244)

Thus, the question of the weight to be given the conflicting conclusions of the two psychiatrists based in part upon varying dates of examination of defendant was properly a matter for the jury.[3] See *Little,* 477 F.2d 767, 774.

Weighing the four factors together, this court finds that defendant has not suffered a deprivation of his right to a speedy trial. The length of delay was neither extreme nor prejudicial when evaluated in light of the gravity of the offense. *Little,* 477 F.2d at 770.

## II.

### Prosecutor's Prejudicial Comments

Defendant contends that two statements made by the Government during closing argument were prejudicial and require reversal and a new trial. Since no objection was raised to these comments at trial, defendant must rely on a plain error theory. Fed.R.Crim.P. 52(b). *United States v. Esposito,* 523 F.2d 242, 251 (7th Cir. 1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768; *United States v. Fearns,* 501 F.2d 486 (7th Cir. 1974). Reversal for "plain error" requires "error both obvious and substantial," or "serious and manifest errors"; and such reversal should be exercised cautiously and only in exceptional circumstances. *United States v. Greene,* 497 F.2d 1068, 1077 (7th Cir. 1974), *cert. denied* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839.

Specifically, defendant complains that the Government improperly stated to the jury during closing a fact not in evidence—that Olivia Batteast, the victim, lost her sight in one eye.[4] In addition, defendant also sug-

---

3. Defense counsel cross-examined Dr. Tuteur on the significance of the delay between the offense and Dr. Tuteur's examination (Tr. 244). In addition, both the Government and defendant argued to the jury the significance of the relative proximity in time of the examination by Dr. Slutsky and Dr. Tuteur to the date of the crime.

4. The prosecutor stated:
    In conclusion, ladies and gentlemen, Mr. Stevens said in his opening statement that there were two victims of this incident, he acknowledged, of course, that Olivia Batteast, who lost sight in one eye, was a victim. He acknowledged that Olivia Batteast who had been shot in the head was a victim. But

gests that the Government's statement to the jury that defendant knew that the purpose of his psychiatric examination was "[w]hether he is going to walk out of this courtroom today . . . " was improper argument.[5]

■ We are fully aware of our responsibility to assure that a defendant obtains a fair trial by an impartial jury. However, as Judge Stevens, now Justice Stevens, recognized in his dissent in *United States v. Thomas,* 463 F.2d 1061 (7th Cir. 1972), "[a]lmost every jury trial requires some compromise with standards of absolute perfection; such deviations must be tolerated if the jury system is to function effectively." 463 F.2d at 1066. The prosecutor's closing argument must be viewed as a whole to determine if it was unduly prejudicial. *United States v. Greene,* 497 F.2d 1068, 1085 (7th Cir. 1974). For the following reasons this court finds that the prosecutor's comments were not so prejudicial as to require a new trial.

### Government Remarks to the Jury Not in Evidence

■ It is uncontested that the record is devoid of evidence bearing upon whether or not Olivia Batteast lost sight in one eye. In response to a question from this court, defendant's counsel on appeal stated that the jurors could not determine whether or not Ms. Batteast, who testified at trial, was blind in one eye from her physical appear-

ance. Counsel for defendant stated that Ms. Batteast's eyes moved together and that there was only slight scarring above the eye.

"During his closing argument, an advocate is permitted to make any comments which are supported by the evidence of record in the case. An advocate is likewise within the bounds of propriety in replying to an argument raised by his opposing advocate." *United States v. Guajardo-Melendez,* 401 F.2d 35, 39–40 (7th Cir. 1968). Neither a basis in evidence nor an appropriate reply justified the Government's statement to the jury in the present case. The Government "violated the fundamental rule, known to every lawyer, that argument is limited to the facts in evidence." *United States v. Fearns,* 501 F.2d 486, 489 (7th Cir. 1974).

The Government's improper statement, however, is not so prejudicial as to require a new trial.

Defendant relies on *United States v. Fearns, supra,* and *United States v. Davis,* 532 F.2d 22 (7th Cir. 1976). Both cases, however, are distinguishable from the case at bar.

In *Fearns,* the prosecutor improperly buttressed the credibility of witness Diann Morris, a participant in the crime, who pleaded guilty and testified on behalf of the Government. Twice during his closing argument the prosecutor referred to a fact not in evidence—that witness Morris made

---

he had the temerity to say that that man Hardeman Jackson was a victim in this case.

As we stand here right now, ladies and gentlemen, thank God we only have one victim; that victim has suffered plenty, we don't need a second victim in this case, but that's exactly what he is trying to do to us right now. (Tr. 298)

5. The prosecutor stated:

This is a man who is undergoing a psychiatric examination, knowing exactly the purpose of that psychiatric examination. Whether he is going to walk out of this courtroom today, that was the purpose of that psychiatric examination, and he knew that and he omitted the single most important fact in this case, and that is, did that lie, did that guard—you think about that lie to that

guard; he had seen that guard there in the morning, he knew that that guard was going to be outside of the room when he came back. You saw the charts. You see the corridor outside of Room 331. You see there is one door to Room 331. Through that corridor where that guard was going to be. He came up, encountered that guard, just like he knew he would. He didn't stutter around for words, he didn't think about it a minute, he didn't tell the truth—he said, "I was hired this morning and I have come back to change my starting time." A well thought out lie because it gained his entrance to the room he wanted to be in, and for the purpose he wanted to be in that room, to shoot Olivia Batteast. (Tr. 295–296)

a prior consistent statement before she was indicted. Defendants failed to object the first time the prosecutor went outside the record and their objection was sustained the second time the improper statement was made.

In *United States v. Davis,* 532 F.2d 22 (7th Cir. 1976), the prosecutor in his closing argument referred to a prior consistent statement not in evidence to buttress the credibility of Postal Inspector Wilson, a key Government witness. Wilson's testimony went to the question of defendant's intent to commit the crime. At the time of the statement to the jury, defense counsel objected. The court instructed the prosecutor to stick to the evidence and the prosecutor incorrectly responded, "That is the evidence, your Honor."

The present case is distinguishable from both *Fearns* and *Davis.* The improper statement to the jury in the present case did not contain information central to the Government's case. The statement neither contained information which buttressed the credibility of a key Government witness nor further inculpated defendant in the crime. On the contrary, the improper statement contained information which was collateral to the sole issue in the case—the question of defendant's sanity at the time of the offense.

In addition, the case at bar is distinguishable since the statement in question was made once in passing and not emphasized and, therefore, the prejudice was not exaggerated.

This court is not condoning the improper and prejudicial statement by the Government. Under the facts of the particular case, however, we do not believe that the improper comment infected the whole decision-making process of the jury so as to require a new trial.

*Government's Argument on Defendant's Insanity Defense*

■ Conflicting psychiatric testimony was submitted on the sole issue before the jury—whether defendant was sane at the time of the offense. Defendant asserts that the Government's argument was improper in that it limited the jury's ability to consider the question of defendant's sanity.

The common element in cases reversed because of improper Government argument relating to the defense of insanity is a prosecutor's invitation to the jury to convict even though it might believe the defendant to be insane in order to keep the defendant off the streets and away from society. *Evalt v. United States,* 359 F.2d 534 (9th Cir. 1966); *United States v. Birrell,* 421 F.2d 665 (9th Cir. 1970); *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir. 1973). That element is not present in the case at bar.

On cross-examination Dr. Slutsky stated that defendant knew the purpose of his examination. (Tr. 181.) Based on this testimony, the Government twice argued that defendant understood that the psychiatric examination by Dr. Slutsky offered a potential way out through an insanity defense.[6] The focus of the Government's argument was a possible motivation for defendant to lie during his psychiatric examination. The single reference to defendant walking out of the courtroom did not have an effect which would convince the jury to convict to keep defendant off the streets but instead cast doubt on Dr. Slutsky's findings of insanity. The Government was not calling upon the jury to convict regardless of whether defendant was sane or insane.

In addition, the Government made reference only once during its closing argument to defendant walking out of the courtroom. The remark was made in passing and was not emphasized.

---

6. In addition to the complained of statement at page 295 of the transcript, the Government also made a similar comment earlier in its closing argument:

The defense psychiatrist also testified that at the time of his examination, the examina-

tion of Hardeman Jackson, the defendant knew the purpose of it, he knew he was being examined as a potential way out for him, a potential insanity defense. (Tr. 273)

In response to a question from the jury as to whether defendant would receive help if found guilty or not guilty (Tr. 313), the trial court submitted the following written instruction to the jury:

In determining the guilt or the innocence of the defendant, you should not give any consideration to the matter of psychiatric treatment for the defendant or to the matter of punishment. (Tr. 314)

Thus, the jury was clearly instructed to disregard the question of punishment or possible treatment depending on the verdict. In effect, the jury was instructed to focus on the central issue in the case.

We wish to emphasize that the Government walks a fine line when it makes reference to a defendant walking out of court where an insanity defense is asserted. The threat always is present that the jury's consideration of the evidence will be affected by their fear that a finding of insanity will result in a defendant being set free. Under the particular facts of the present case, however, the danger of this having occurred seems minimal. Accordingly, we do not believe that a new trial is required.

## III.

### Special Interrogatory

■ Defendant contends that the trial court erred in refusing to submit defendant's proposed special interrogatory to the jury:

Has the government proved beyond a reasonable doubt that at the time of the alleged offense Hardeman Jackson did not have a mental disease or defect or that despite a mental disease or defect he had substantial capacity to conform his condition to the requirements of the law?

Defendant asserts that the special interrogatory would require an explicit decision on the question of defendant's sanity and

thereby minimize prejudice from jurors' hesitancy to acquit on the ground of insanity. Defendant also argues that since in a bench trial a judge must make special findings of fact pursuant to Fed.R.Crim.P. 23(c), such a right should not be lost by exercise of the constitutional right to a jury trial.

For the following reasons we agree with the Government that the trial court's refusal of the special interrogatory was proper.

In *United States v. Greene,* 497 F.2d 1068 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839, defendant relied solely on an insanity defense. The defense requested that the jury make a special finding on the issue of insanity. As in the present case, defendant asserted that his right to special findings of fact should not be lost because he chose to exercise his right to a jury trial. The court refused defendant's request and ruled that a special finding would serve no purpose. *Greene,* 497 F.2d at 1076 n. 11.

Similarly, a special interrogatory to the jury in the case at bar would have served no useful purpose. The sole issue for the jury's consideration was the question of defendant's sanity at the time of the offense. Thus, the jury's attention would inevitably be drawn to this question. In addition, defendant's proposed special interrogatory merely tracks much of the language utilized by the trial court in giving the insanity instruction mandated by this court in *United States v. Sennett,* 505 F.2d 774, 778 (7th Cir. 1974).[7] This instruction was sent with the jury into the jury room. (Tr. 306)

This court cannot see, therefore, how the proposed interrogatory would have further protected defendant.

■ Special interrogatories to the jury and verdicts are generally looked upon with disfavor in criminal cases. *Heald v. Mullaney,* 505 F.2d 1241 (1st Cir. 1974), *cert.*

---

7. The instruction provides:

In this case the sanity of the defendant at the time of the offense charged is an issue. This means that, in addition to proving beyond a reasonable doubt the elements of the offense charged, the prosecution must also prove beyond a reasonable doubt that at the

time of the offense charged the defendant did not have a mental disease or defect, or that despite the mental disease or defect he had substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law.

*denied*, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432; *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969); *United States v. James*, 432 F.2d 303 (5th Cir. 1970); *United States v. Gallishaw*, 428 F.2d 760 (2d Cir. 1970); see also Wright, *Federal Practice and Procedure* § 512. We see no reason for the use of a special interrogatory in the case at bar.

## IV.

### *Adequacy of Voir Dire*

Defendant contends that the district court abused its discretion and committed reversible error by failing to make adequate inquiry into the attitudes of the jury about psychiatry or prejudice against a defense of insanity.

For the following reasons we believe the voir dire was adequate.

Pursuant to Fed.R.Crim.P. 24(a),[8] the trial court conducted the examination of prospective jurors. The trial judge has considerable discretion over the latitude and manner of voir dire examination. *United States v. Desmarais*, 531 F.2d 632 (1st Cir. 1976). However, the trial judge does not possess unlimited discretion to ignore proposed questions. *United States v. Lewin*, 467 F.2d 1132, 1138 (7th Cir. 1972). The court's discretion is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931), cited in *United States v. Dellinger*, 472 F.2d 340, 367 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706. Adequate questioning must be conducted to provide under the facts in the particular case some basis for a reasonably knowledgeable exercise of the right of challenge, whether for cause or peremptory. *Lewin*,

467 F.2d at 1137–38; *Dellinger*, 472 F.2d at 367–68; *United States v. Martin*, 507 F.2d 428, 432 (7th Cir. 1974).

Defendant complains in a general way about the depth of inquiry into attitudes of the jury relating to psychiatry and reliance upon an insanity defense. After examining the voir dire conducted by the trial judge and comparing his inquiry to the questions suggested by the defendant and the Government, we do not believe that the scope of inquiry was improperly limited. The district judge's questions touched upon the following areas: employment relating to psychiatric treatment; contact with learning on the subject of psychiatry and psychology; contact with people interested in psychiatry or psychology; members of the family receiving psychiatric or psychological treatment; personal experiences which would color the juror's judgment on the question of an insanity defense; inquiry as to whether the individual had any reason to feel one way or the other about an insanity defense; books read on psychiatry or psychology; willingness to consider expert opinions with an open mind; and whether the juror knows a psychiatrist or a psychologist.

In light of the scope of questions asked, we cannot say that the district court abused its discretion in limiting the scope of voir dire. The questions asked provided defendant with a reasonable basis for exercise of the right to challenge.

## V.

### *Sufficiency of Proof*

Defendant contends that the evidence was insufficient to prove his sanity beyond a reasonable doubt. According to defendant, the evidence shows that the

---

**8.** Fed.R.Crim.P. 24(a) provides:

(a) *Examination.* The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his

attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

shooting was unplanned and constituted a response out of all proportion to Batteast's insistence that defendant submit the required form. Defendant suggests that his response should be measured in light of his history and the events predating the shooting.

In order to succeed, defendant "must demonstrate that all reasonable men must necessarily possess a reasonable doubt as to defendant's sanity." *United States v. Greene,* 497 F.2d 1068, 1072 (7th Cir. 1974), *cert. denied* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839. The evidence must be viewed in a light most favorable to the Government. *Greene,* 497 F.2d at 1073. Defendant has failed to satisfy this standard of proof in the present case.

The legal defense of insanity raises complex moral, legal, and medical judgments. "[I]n view of the complicated nature of the decision to be made—intertwining moral, legal, and medical judgments—it will require an unusually strong showing to induce us to reverse a conviction . . . ." *United States v. Kissane,* 478 F.2d 1098, 1100 (7th Cir. 1973), cited in *Greene,* 497 F.2d at 1073.

The jury evaluated the evidence in the present case and found defendant guilty. We do not believe that defendant has made a strong enough showing to justify reversing the jury's judgment.

For the foregoing reasons, the conviction of Defendant Hardeman Jackson is hereby affirmed.

AFFIRMED.