834 F.2d 645
 UNITED STATES of America, ex rel. Frank BRADLEY, Petitioner-Appellant,
v.
Michael P. LANE, Director of the Illinois Department of
Corrections, and Neil F. Hartigan, Attorney
General of the State of Illinois,
Respondents-Appellees.
 No. 85-2347.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 15, 1986.
Decided Nov. 24, 1987.
Rehearing and Rehearing En Banc
Denied Dec. 23, 1987.
 
 1
 Lori S. Klingman, Glencoe, Ill., for petitioner-appellant.
 
 
 2
 Arleen C. Anderson, Office of Ill. Atty. Gen., Chicago, Ill., for respondents-appellees.
 
 
 3
 Before CUMMINGS and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*
 
 
 4
 WILLIAM J. CAMPBELL, Senior District Judge.
 
 
 5
 Petitioner/appellant Frank Bradley appeals the district court's denial of his petition for habeas corpus relief pursuant to 28 U.S.C. Sec. 2254. Petitioner raises several arguments, mainly along Sixth Amendment ineffective assistance of counsel lines. Respondents/appellees Michael Lane, Director of the Illinois Department of Corrections, and Neil Hartigan, Attorney General of the State of Illinois assert the arguments advanced by petitioner were waived by his failure to raise them during the state court appellate proceedings (see Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Petitioner Bradley counters that his failure to raise the relevant arguments was due to the ineffective assistance of counsel he received and, in essence, fulfills the "cause" requirement set forth in Wainwright. Bradley also concludes he was prejudiced by his counsel's ineffective performance. In the alternative, respondents argue petitioner's counsel met minimal Sixth Amendment--Due Process requirements as enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons set forth below, we will affirm the district court's denial of habeas corpus relief.
 
 
 6
 On June 16, 1982 Bradley was convicted by a jury in the circuit court for the State of Illinois of taking indecent liberties with a minor, in violation of Ill.Rev.Stat. ch. 38, Sec. 11-4(a)(3). He was sentenced to a four-year term of imprisonment. On direct appeal to the Appellate Court of Illinois, Fourth District, Bradley presented one argument--that he was entitled to a new sentencing hearing because the trial court had failed to consider "periodic imprisonment" as an alternative sentence. This argument was rejected and his conviction affirmed (see People v. Bradley, 113 Ill.App.3d 1172, 75 Ill.Dec. 384, 457 N.E.2d 174 (1983)). Leave to appeal was denied by the Illinois Supreme Court on October 4, 1983.
 
 
 7
 Thereafter, Bradley filed a petition for relief under the Illinois Post-Conviction Hearing Act (Ill.Rev.Stat.1983, ch. 38, par. 122-1 et seq.). Petitioner presented a full panoply of arguments at this point: that he was convicted under an unconstitutionally vague statute; that the information charging him was defective, resulting in a lack of trial court jurisdiction; that he was unconstitutionally denied a prompt preliminary hearing as required by the Illinois Constitution; and that his constitutional guarantee against double jeopardy was violated. Bradley also advanced several arguments under a single ineffective assistance of counsel heading. Bradley argued errors at trial by his counsel deprived him of his due process rights and Sixth Amendment right to a fair trial. He concluded the cumulative effect of his counsel's errors amounted to ineffective assistance of counsel and warranted a new trial. The circuit court rejected these arguments. The Appellate Court of Illinois, Fourth District, also denied petitioner relief (see People v. Bradley, 128 Ill.App.3d 372, 83 Ill.Dec. 701, 470 N.E.2d 1121 (1984)). The Supreme Court of Illinois again denied leave to appeal.
 
 
 8
 Having properly exhausted his state remedies (see, for example, Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)), Bradley petitioned the United States District Court for the Central District of Illinois for habeas corpus relief pursuant to 28 U.S.C. Sec. 2254 raising many of the "post-conviction" arguments advanced above. The district court, 612 F.Supp. 795, denied the petition. Bradley appeals. As stated earlier, we affirm.
 
 
 9
 Although there is good reason to believe petitioner's post-conviction arguments were waived under the law of Wainwright v. Sykes, supra, and much time is spent arguing this point in the briefs, we will refrain from a Wainwright "cause-and-prejudice" analysis in this case, which could get rather cumbersome, and move directly to petitioner's post-conviction arguments, which we believe lack merit and can be dismissed rather quickly. In other words, assuming arguendo the Wainwright "cause and prejudice" test does not preclude us from hearing the post-conviction arguments of petitioner, we believe he would still not prevail.
 
 
 10
 Petitioner's main argument is that he was denied effective assistance of counsel at both the trial and appellate levels as guaranteed by the Sixth Amendment to the United States Constitution. Many examples are raised. Bradley claims his trial counsel failed to object to the trial court's questioning of a witness, which he concludes amounted to inappropriate judicial rehabilitation of a prosecutor's witness. Bradley also argues his counsel failed to object "when the prosecuting attorney shifted the burden of proof to him." He claims his counsel failed to assert his rights by waiving his opening statement, calling no witnesses, proffering no evidence and resting his case when the state finished its case-in-chief. Petitioner claims his counsel should have warned him not to speak to a social worker who visited his home, a visit which ultimately produced incriminating statements by Bradley that the social worker brought out at trial. Finally, petitioner notes his appellate counsel raised only one issue on direct appeal to the state appellate court, the propriety of his sentence, which petitioner believes is a nonissue.
 
 
 11
 On a separate but related front, Bradley claims his trial counsel was hindered by a conflict of interest. Bradley argues his counsel had a "negative mental disposition" or a negative "overall attitude" toward him, making counsel more an adversary than an advocate. This is evidenced, Bradley asserts, by the fact that the victim in this case, his daughter, was abused by petitioner's brother-in-law in a previous incident. At that time Bradley's trial counsel in the instant case "made accusations" about petitioner's dubious role in the protection of his daughter. Petitioner points out his trial counsel was the only public defender in Livingston County, Illinois during the time of his trial and suggests private counsel or a public defender from another county would have been more appropriate.
 
 
 12
 In Strickland, supra, the Supreme Court set forth the following guidelines and principles in analyzing a defendant's ineffective assistance of counsel claim:
 
 
 13
 The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.... A convicted defendant's claim that counsel's assistance was so defective as to require reversal ... has two components. First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.... [T]he proper standard for attorney preformance is that of reasonably effective assistance.... [T]he defendant must show that counsel's representation fell below an objective standard of reasonableness.... [E]very effort (must) be made to eliminate the distorting effects of hindsight ... [a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
 
 
 14
 104 S.Ct. at 2064-65 (citations omitted) (parenthesis added).
 
 The Strickland court continued:
 
 15
 An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.... Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
 
 
 16
 Id. at 2066-67 (citations omitted).
 
 The Court concluded:
 
 17
 It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 
 18
 Id. at 2067-68.
 
 
 19
 We conclude defendant has failed to meet his burden under Strickland and a reversal along ineffective assistance of counsel grounds is unwarranted. Bradley's objection to the trial judge's questioning of his daughter, the victim in this case (see appendix), is without merit. The questioning did not project or create any judicial bias toward Bradley but merely served to clarify certain facts, specifically the layout of the bedroom in which the incident occurred. The judge did not assume a prosecutorial role. Instead, he was attempting to clarify the factual record. There is no prohibition against a judge asking a witness various questions to clarify an issue of import to the case (see, for example, People v. Palmer, 27 Ill.2d 311, 189 N.E.2d 265 (1963)). Hence we conclude trial counsel did not err in failing to object to the court's questioning here and no prejudice resulted to Bradley from such questioning.
 
 
 20
 As for Bradley's assertion that his trial counsel failed to aggressively defend him due to a lack of an opening statement, the failure to present witnesses, and the resting of his case when the state completed its case-in-chief, we conclude such trial tactics do not constitute an ineffective assistance of counsel under the circumstances of this case. The record reveals Bradley's counsel made repeated objections at trial, vigorously cross-examined several key witnesses including the complainant, moved for a directed verdict, and gave what the state appellate court described as a persuasive closing argument. Defense counsel moved to secure funds for a psychiatric examination of petitioner, evidencing an attempt to develop an argument in this well-known area. During his cross-examination, counsel tried to elicit testimony from the few key witnesses in the case who could lead a jury to conclude the charges against his client were fabricated and the result of resentment on the part of the complainant. This was yet another sound trial strategy employed by petitioner's counsel. The fact that counsel did not present any witnesses or present his own case is misleading when one considers the privacy under which the incident occurred and defense counsel's thorough cross-examination of the complainant and vigorous closing argument. Bradley further argues that his appellate counsel's incompetence is evidenced by the fact that he raised but one issue on direct appeal, the propriety of his sentence. Yet in view of our disposition of the other issues Bradley presents in this appeal, we conclude Bradley's appellate counsel did not fail to raise any meritorious issues.
 
 
 21
 Finally, Bradley claims his counsel should have warned him not to speak to the social worker who visited his home. Bradley cites no authority for the proposition that a failure to warn under these circumstances constitutes ineffective assistance of counsel. Indeed, the record reveals that Bradley volunteered the statements to the social worker. The statements were not elicited deliberately or secured involuntarily under a setting which could be classified as a custodial, state sponsored interrogation. (cf. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)). There was no compelled self-incrimination here.[1] In this situation, counsel's failure to warn petitioner to stay silent is insufficient to sustain an ineffective assistance claim under Strickland. In sum we fail to find defense counsel's performance at trial deficient to the point, to paraphrase Strickland, where we would conclude there is a reasonable probability that the result would have been different but for counsel's errors. The arguments raised by petitioner simply fail to undermine our confidence in the outcome of his trial.[2]
 
 
 22
 Petitioner also argues that his counsel suffered from a conflict of interest and therefore was unable to aggressively and effectively defend him. In Strickland the Court noted that, "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'." 104 S.Ct. at 2067 (citing Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)). Defendant's argument suffers from a lack of specifics. As stated earlier many general accusations are made such as defense counsel had a "negative mental disposition" toward him (see petitioner's brief p. 12) and a poor "overall attitude" (brief p. 11). Petitioner's most specific example used to illustrate why counsel could not zealously defend him is the statement counsel apparently made to him years previous to the instant case when petitioner's brother-in-law had abused Bradley's daughter. At that time counsel apparently commented negatively toward petitioner about his failure to protect his daughter adequately.
 
 
 23
 Petitioner fails to convince us that a conflict of interest affected his lawyer's performance. While Bradley strenuously objects to his counsel's diligence and zealousness in this appeal, counsel for the government points out the trial judge gave petitioner 13 days to move to discharge his attorney, however petitioner never took any action. Regardless, Bradley's speculations in this area need more support or verification in order to prevail under the Strickland criteria. In sum, after reviewing Bradley's assertions under the relevant legal standards, we conclude petitioner has failed to raise any issues or circumstances of constitutional dimension which would lead us to embrace his ineffective assistance of counsel claim.
 
 
 24
 Bradley argues the statute under which he was convicted was unconstitutionally vague. This argument must be rejected. A statute passes constitutional muster if it has "... a meaning sufficiently precise for a man of average intelligence to 'reasonably understand that his contemplated conduct is proscribed'." United States v. Mazurie, 419 U.S. 544, 553, 95 S.Ct. 710, 715-16, 42 L.Ed.2d 706 (1975) (citing United States v. National Dairy Products Corp., 372 U.S. 29, 32-33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1983)). Viewing the matter from a different angle, a statute is constitutionally deficient if it "... fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed.2d 989 (1954). We note "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." Mazurie, supra, 419 U.S. at 550, 95 S.Ct. at 714.
 
 
 25
 In the instant case, the pertinent part of the statute under which Bradley was convicted reads as follows:
 
 
 26
 (a) Any person of the age of 17 years and upwards commits indecent liberties with a child when he or she performs or submits to any of the following acts with a child under the age of 16:
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (3) Any lewd fondling of either the child or the person done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the person or both.
 
 
 30
 Ill.Rev.Stat.1983, ch. 38, par. 11-4(a)(3).
 
 
 31
 This statute was declared constitutionally valid by the Appellate Court of Illinois, Second District, in People v. Polk, 10 Ill.App.3d 408, 294 N.E.2d 113 (1973). Petitioner argues the Polk court dealt with only par. 11-4(a)(1) and merely "incorporated" the remainder of the statute into its opinion. Regardless, the same court in People v. Thingvold, 66 Ill.App.3d 1002, 23 Ill.Dec. 695, 384 N.E.2d 489 (1978) specifically held par. 11-4(a)(3), the "indecent liberties" section, constitutional. We see no reason to overrule those conclusions. The record in this case reveals petitioner fondled his daughter's breasts, among other things. Bradley claims, in essence, there is no way he could have realized such conduct was "lewd" or "capable of arousing or satisfying the sexual desires" of himself or the complainant within the meaning of the statute. We simply conclude, after examining the statute in light of the facts of the case at hand, that a person of ordinary intelligence would have had fair notice that breast fondling would be considered proscribed activity under the statute. Under the criteria set forth above, we believe the statute gave sufficiently fair and specific notice of the offensive activity at issue in this case.
 
 
 32
 Bradley's final argument is that he was denied a fair trial because of prosecutorial misconduct. First, Bradley objects to the prosecutor's statement during closing argument that he really didn't consider his closing an argument at all but rather a statement of fact. Secondly, Bradley claims the prosecutor improperly shifted the burden of proof to him by stating, "We have here a case where the only defense is 'hey, she made it up.' Well is that good enough in Livingston (County)?" (Tr. p. 118) (parenthesis added). Petitioner concludes the inference created here was that the defendant had "to present some specific form of defense over and above persuading the jury of the lack of credibility of its star witness or showing that the state has not proved its case." (Brief p. 30). Finally, Bradley claims the prosecutor misrepresented the testimony of various witnesses during closing and suggested the jury consider that testimony for an improper purpose. Petitioner concludes the closing argument was deliberately misleading and designed to fill the jurors with unnecessary emotion, denying him of his right to a fair trial.
 
 
 33
 In the landmark case of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which involved the issue of a prosecutor's commenting about a defendant's failure to testify, the Court stated, after reviewing the harmless error rules of the 50 states as well as the federal court that:
 
 
 34
 All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.
 
 
 35
 386 U.S., at 22, 87 S.Ct., at 827.
 
 
 36
 In United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) the Court stated:
 
 
 37
 Since Chapman, the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations, see, e.g., Brown [v. U.S.], supra, 411 U.S. , at 230-232, 93 S.Ct. [1565], at 1569-1570 [ (1973) ]; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). The goal, as Chief Justice Traynor has noted, is "to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error."
 
 
 38
 461 U.S. at 509, 103 S.Ct. at 1980 (citation omitted).
 
 
 39
 The question before us is whether the errors cited by petitioner had a likelihood of changing the result of the trial, thereby denying him a fundamentally fair trial. We believe the errors were harmless. In this case, we are satisfied that the single statement of the prosecutor that he considered his closing argument a statement of fact was mitigated by the trial court's curative instruction to the jury that closing arguments were not evidence in the case. We do not believe the jury so naive that it would be unable to distinguish prosecutorial zeal from what the court reminded it was really the evidence in this case. Nonetheless, we note such prosecutorial posturing is not condoned by this court.
 
 
 40
 We simply cannot embrace petitioner's argument that there was a material, constitutionally violative shift of the burden of proof in this case. The prosecutor merely stated, "We have here a case where the only defense is hey, she made it up. Well is that good enough in Livingston (County)?" (Tr. p. 118) (parenthesis added). This cannot be considered a direct reference to petitioner's decision not to testify (see Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229 (1965)). We also cannot conclude this was even a prejudicial indirect reference (see, for example, United States of America, ex rel. Burke v. Greer, 756 F.2d 1295 (7th Cir.1985)). We agree with the district court that the prosecution was merely attempting to summarize petitioner's defense to the charges at issue. We are unpersuaded that the comment shifted the burden to petitioner to present a specific defense as he suggests.
 
 
 41
 Finally, Bradley objects to the following statement by the prosecutor:
 
 
 42
 You are being asked to believe by the defense this is the most amazing fourteen-year-old you have ever met. Not only can she make up a story like this, she can con a DCFS worker to believe her. She can con her brother who was obviously not here particularly willing into believing that she said what she said and coming into court and testifying about it. I find that absolutely amazing.
 
 
 43
 Tr. pp. 117-18.
 
 
 44
 Petitioner argues this statement misrepresented the testimony of the witnesses presented at trial. We believe the statement is representative of accepted advocacy techniques and merely summarized the position of the defense, albeit from a prosecutorial angle. We do not believe this was argument so improper as to necessitate a new trial as petitioner suggests. After a review of the record, we see no prejudice of constitutional dimensions.
 
 
 45
 For the reasons set forth above, the district court's denial of petitioner's request for habeas corpus relief is
 
 
 46
 AFFIRMED.
 
 APPENDIX
 
 47
 At the close of the state's redirect examination, the court questioned the victim as follows:
 
 
 48
 THE COURT: Did your parents bedroom have a door on it leading into the livingroom?
 
 
 49
 THE WITNESS: Yes.
 
 
 50
 THE COURT: Was there another way to get in and out of their bedroom?
 
 
 51
 THE WITNESS: No.
 
 
 52
 THE COURT: Can you remember whether the door was open or closed?
 
 
 53
 THE WITNESS: Could you please restate that?
 
 
 54
 THE COURT: Can you remember whether the door was open or closed at the time of the things that you have testified to here?
 
 
 55
 THE WITNESS: Closed.
 
 
 56
 THE COURT: Did the door lock?
 
 
 57
 THE WITNESS: Yes.
 
 
 58
 THE COURT: How did you go about locking it?
 
 
 59
 THE WITNESS: I did not.
 
 
 60
 THE COURT: Who did?
 
 
 61
 THE WITNESS: I am not for sure if it was locked or not.
 
 
 62
 THE COURT: How would you go about locking it, if you were to wish to have it locked?
 
 
 63
 THE WITNESS: You would pull it shut and then with one of them little hooks, you would hook it.
 
 
 64
 THE COURT: There was a hook and an eye?
 
 
 65
 THE WITNESS: Yes.
 
 
 66
 THE COURT: How many beds were in the bedroom?
 
 
 67
 THE WITNESS: One.
 
 
 68
 THE COURT: And how large a bed was it?
 
 
 69
 THE WITNESS: It was big enough for two people.
 
 
 70
 THE COURT: Was there other furniture in the bedroom too?
 
 
 71
 THE WITNESS: Yes.
 
 
 72
 THE COURT: What was it?
 
 
 73
 THE WITNESS: There was two dressers and like a dresser with a closet on it.
 
 
 74
 THE COURT: A chair?
 
 
 75
 THE WITNESS: No.
 
 
 76
 THE COURT: Where did these activities take place in the bedroom?
 
 
 77
 THE WITNESS: On the bed.THE COURT: I have no further questions.
 
 
 78
 You may step down, and thank you.
 
 
 79
 Tr. pp. 60-62.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Bradley argues or more accurately infers that the social worker's visit was part of a state-sponsored conspiracy since at the time of the visit he had already been arrested and released on bond. Hence, the argument runs, there was no duty on the social worker's part to investigate charges concerning him. Bradley asserts the primary purpose of the visit was to extract incriminating evidence from him. There is no persuasive evidence advanced to substantiate any of these allegations. We are left to speculate as to which state official the social worker may have conspired with. A social worker is entitled to visit the house of an accused child abuser after his arrest without being presumed to be a part of a state-sponsored conspiracy. It does not take great imagination to foresee potential benefits from such a visit. As for the incriminating statements voluntarily given by Bradley, that issue has been addressed, supra
 
 
 [2]
 We note petitioner admits in his brief that his counsel "did some things right" (p. 12) and "did effectively cross-examine the complaining witness." (p. 7)