**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hector HERNANDEZ and Jose Barcelo, Defendants–Appellants.**

Nos. 88–1705, 88–1771.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1988.

Decided Jan. 25, 1989.

Gerald J. Collins, William H. Theis, Chicago, Ill., for defendants-appellants.

David Glockner, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and RIPPLE, and KANNE, Circuit Judges.

BAUER, Chief Judge.

Hector Hernandez and Jose Barcelo were separately tried by jury and convicted of conspiring to distribute cocaine in violation of 21 U.S.C. § 846 and of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). Barcelo was also convicted of using a telephone to facilitate these felonies in violation of 21 U.S.C. § 843(b). Both defendants appeal their convictions, alleging that the prosecutors' comments in closing argument denied them their right to a fair trial. We affirm.

## I. Statement of the Facts

On July 22, 1987, Leo Arreguin, a special agent for the Drug Enforcement Administration, arranged, through a confidential informant, to have Barcelo phone Arreguin to set up a purchase of cocaine. Barcelo contacted Arreguin and they negotiated the

price and quantity of cocaine. Barcelo indicated that he was willing to proceed with the sale immediately, but Arreguin delayed the sale until the following day so that he could arrange for surveillance and assistance.

The next day, Arreguin instructed Barcelo to meet him at a motel room in downtown Chicago. At approximately 11:55 a.m., a DEA agent observed Barcelo, Hernandez, and another person whom Barcelo later identified as his wife, arrive at the motel and walk to the room where Arreguin and the informant were waiting. After Barcelo and the informant acknowledged each other by waving through the motel room's window, all three individuals were permitted to enter the room. Barcelo introduced Hernandez as his friend. Arreguin asked if they had the cocaine and Barcelo replied that they did. Barcelo picked up a white plastic bag that Hernandez had been carrying and dumped the contents of the bag onto the bed. Among the contents was a box which Barcelo handed to Hernandez and directed him to open. Hernandez broke the tape sealing the box, opening the box to reveal two packages wrapped in plastic and tape. Hernandez removed the packages, stated that they were two kilograms of cocaine, and placed the packages on the bed. Arreguin broke open one package and found cocaine. He asked if the cocaine was of good quality. According to Arreguin, Barcelo replied that it was the best in Chicago; Hernandez responded that the cocaine was 98% pure. Hernandez further stated that he could deliver between ten and fifteen kilograms of cocaine per month.

Arreguin placed the packages of cocaine in a suitcase and asked Barcelo and Hernandez to accompany him outside to get the money. As they stood on a sidewalk outside the motel, Arreguin asked how much cocaine they could deliver the following week. Barcelo stated that he could deliver ten kilograms. Hernandez nodded in agreement. Barcelo and Hernandez were then arrested.

## II. Standard of Review

To warrant a reversal of a conviction on grounds of a prosecutor's improper comment in closing argument, a court must find that the prosecutor's remarks were both inappropriate and harmful. *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); *United States v. Brantley*, 786 F.2d 1322, 1330 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). The court must first consider whether the challenged remark, viewed in isolation, was improper. If so, the remark must be reviewed in context of the entire case to determine whether the remark affected substantial rights of the accused. *United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). In assessing whether the prosecutor's comments infected the trial with unfairness, this court may consider the nature and seriousness of the prosecutorial misconduct, whether the comments are invited by impermissible conduct of the defendant's counsel, whether the court issued curative instructions, and the weight of evidence against the defendant. *See Darden v. Wainwright*, 477 U.S. 168, 181–83, 106 S.Ct. 2464, 2472–73, 91 L.Ed.2d 144 (1986). *See also United States v. Pirovolos*, 844 F.2d 415, 426 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

## III. Hernandez

Hernandez claims that the prosecutor's reference in closing argument to "Cuban drug dealers" denied him a fair trial. The comment occurred in the prosecutor's rebuttal and was part of the prosecutor's affirmation of the jury system of justice. The prosecutor stated:

There is nothing more worthy, nothing more—no service more worthy than the jury service that you are performing, for each of you in your own special way are protecting the well-being of our society. Each of you by the verdict that is represented by the evidence will send a clear message to Cuban drug dealers and drug dealers in these United States. . . .

The Constitution prohibits a prosecutor from making race-conscious arguments since it draws the jury's attention to a characteristic that the Constitution generally demands that the jury ignore. *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 1777 n. 30, 95 L.Ed.2d 262 (1987); *McFarland v. Smith,* 611 F.2d 414, 417 (2d Cir. 1979). The government conceded, at oral argument, that the prosecutor's remark was improper. We agree that, within this context, the remark was indefensible. Nevertheless, within the context of the entire trial, the remark was not so inflammatory as to prejudice the defendant.

The prosecutor's remark was not intentionally injected into volatile proceedings where the prosecutor had targeted the defendant's ethnic origin for emphasis in an attempt to appeal to the jury's prejudices. The trial court found that the comment was an isolated and inadvertent reference in an otherwise dispassionate and intelligent presentation of the evidence. The trial court observed the demeanor, mood and tone of the prosecutor in presenting the closing argument and found that the argument was not hostile. We accord substantial deference to this finding. *See United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir.), *cert. denied,* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986). The prosecutor's reference may have been inappropriate but there is no evidence that this singular comment was a deliberate attempt to play upon the prejudices of the jury.[1]

Moreover, it is unlikely that this comment sufficed to alter the outcome of the trial. The evidence against Hernandez was substantial. This was not a hotly-contested, close case. Hernandez's defense at trial was that he was not a knowing participant in the crimes; he testified that he was not aware a drug transaction was taking place because of the effect on him of the painkillers he was taking for his recent stab wounds. He claimed that he was present at the motel room solely to see the informant who was a friend from Cuba. However, Hernandez's own testimony, the testimony of Arreguin and the testimony of the nurse who released Hernandez from the hospital contradicts Hernandez's assertion that his senses were impaired. In view of the evidence presented, it is inconceivable that if the prosecutor had refrained from making the remarks he did, Hernandez would have been acquitted. *Mazzone,* 782 F.2d at 764.[2]

## IV. Barcelo

Barcelo contends that three separate remarks by the prosecutor, when considered either independently or cumulatively, denied him a fair trial. Barcelo failed to object to two of these statements at trial. Thus, these two comments are analyzed under the "plain error" doctrine and Barcelo's conviction will be reversed only if a miscarriage of justice would otherwise result. *Young,* 470 U.S. at 15, 105 S.Ct. at 1046; *United States v. Garner,* 837 F.2d 1404, 1424 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). These two claims are considered first.

Barcelo first claims that the government improperly shifted the burden of proof to the defendant when the prosecutor commented in closing argument that no witness disputed that Barcelo was present at the motel on the day of the arrest.[3] Barce-

---

**1.** By way of passing, the response of the trial court to defense counsel's objection to the "Cuban" reference was also inappropriate. While the attempt to laugh off the comment with a reference to "the Irish" was probably designed to put the argument in perspective, a better ruling would have sustained the objection and warned the prosecutor to refrain from such improper argument.

**2.** We also note that the trial court instructed the jury that they should not be influenced by a person's race, color, religion, national ancestry or sex. An instruction such as this can be curative and temper any taint that might arise from a prosecutor's unfortunate remark. *Darden,* 477 U.S. at 182, 106 S.Ct. at 2472. When a trial court issues such an instruction and believes that in that instance it dissipates the error, this court is reluctant to disturb that finding. *Mazzone,* 782 F.2d at 764.

**3.** The comment to which Barcelo objects follows:

But what about the circumstantial evidence here? What was he doing at the Ohio House on the 23rd of July? Is he a door-to-door

lo argues that this implied to the jury that he was required to testify or to produce witnesses establishing that he was not there that day—tacks which he did not pursue at trial. A fair reading of the prosecutor's statement discloses that Barcelo attributes far greater import to the statement than properly can be inferred.

 The fifth amendment prohibits a prosecutor from making direct, or indirect, adverse comments on the defendant's failure to testify in his own behalf. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). However, a prosecutor's comment that the evidence is uncontradicted does not implicate this right, unless the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *United States v. DiCaro,* 852 F.2d 259, 263 (7th Cir.1988); *Adkins v. Greer,* 791 F.2d 590, 597–98 (7th Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 586 (1986). Here, the comment was not made in context of discussing the defendant's failure to testify or to produce witnesses or to refute the government's case, but was offered as part of the prosecutor's argument explaining how the jury could inferentially connect Barcelo to the arrangements made over the phone for the drug sale. The prosecutor told the jury that strong circumstantial evidence permitted them to infer that Barcelo was the man with whom Arreguin spoke on the telephone. The prosecutor summarized the undisputed evidence before them. That

Barcelo was present at the motel room was never challenged at trial; in fact, in his opening statement, Barcelo's counsel stated that Barcelo would not dispute that he was present that day. The prosecutor's statement summarizing this uncontradicted testimony did not constitute an impermissible shift of the burden of proof. *See United States ex rel. Bradley v. Lane,* 834 F.2d 645, 652 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1746, 100 L.Ed.2d 209 (1988). Nor was the statement a direct or indirect reference to Barcelo's refusal to testify. The prosecutor's remark was not improper.

 Barcelo's second contention is that the prosecutor argued that to find the defendant not guilty, the jurors would have to find that the government witnesses lied. Barcelo misconstrues the prosecutor's statement and lifts it from its context.[4] The statement occurred in response to the defense counsel's closing argument questioning why the confidential informant never testified. The prosecutor responded that the informant's testimony was unnecessary since it would have merely duplicated the agent's version of the events. If the jury did not believe the agent's testimony, the presentation of the informant's testimony would have been futile and the jury should logically acquit the defendant. This was not a misstatement of the law, nor did it manipulate the evidence. The prosecutor did not state that in order to find Barcelo not guilty, the jurors necessarily had to

---

salesman or did he go to the Ohio House because he knew that someone there was interested in purchasing cocaine from him?

Remember, we have never heard anybody dispute that he was present at the Ohio House on the 23rd of July.

4. The statement, in context, follows:

My opponent, as I understood him, said, "Why isn't that person here? Why don't they bring him in and make him swear to tell the truth and come up and give his version of what happened in these events?"

Well, ladies and gentlemen, the problem that I have with that can be summed up by saying the following to you: If you don't believe Leo Arreguin, if you think that Leo Arreguin came in here and swore before you as a jury, before this judge, and with his right hand in the air to tell the truth, if you think

that that federal agent, an employee of you and every other citizen of this country, if you think that he came in here and lied, then you have no business finding this man guilty.

If we put on a liar, if we based our case on perjury, then the least that should happen to us is for you to give a not guilty verdict in this case. But on the other hand if you believe that Leo Arreguin is a competent and honest law enforcement agent who came in here and testified truthfully about what happened on July 22nd and 23rd, then let's talk about the man from Atlanta [the informant].

What is he going to say?

\* \* \* \* \*

Is there anything that Leo Arreguin told you that was not complete? Is there anything that the man from Atlanta could have told you that Leo Arreguin wasn't there to witness and give testimony about?

disbelieve Arreguin. *Cf. United States v. Phillips*, 527 F.2d 1021 (7th Cir.1975). The prosecutor correctly posited that if the jury disbelieved the government's witnesses, they should acquit the defendant. No error exists in this statement.

Barcelo's third complaint concerns the prosecutor's reference to the anonymity of the confidential informant. As to this statement, to which Barcelo offered an objection at trial, we consider whether the statement was so prejudicial as to deprive Barcelo of a fair trial. *United States v. Lewis*, 797 F.2d 358, 369 (7th Cir.1986), *cert. denied*, 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987). Barcelo argues that the prosecutor's remark as to why the government preserved the anonymity of the informant throughout trial suggested that Barcelo had threatened or would threaten the safety of this informant and Barcelo should be convicted. Again, Barcelo attributes much to an otherwise innocuous remark.

In response to defense counsel's repeated questioning why the government did not call the informant at trial or reveal the informant's name, the prosecutor stated that the jury was probably aware of the legitimate reasons why the government did not name the informant.[5] While such a remark may permit a juror to speculate on the reasons for the informant's anonymity, one of which may be the constant threat to an informant's safety, the prosecutor did not introduce or suggest anything to the jury that was not common knowledge. *See, e.g., United States v. Zylstra*, 713 F.2d 1332, 1340 (7th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983) (it is common knowledge that drug trafficking is a violent enterprise and undercover agents face a constant risk of death and serious injury). No basis exists for Barcelo's claim that the jury was led to believe that he had actually harmed or threatened to harm the informant. From the general remark which the prosecutor offered to the jury, it would be equally plausible for them to suppose that the identity of the informant could not be disclosed because the informant would no longer be useful if his identity were revealed. No harm resulted from such an ambiguous remark.

These prosecutorial arguments, whether considered individually or in the aggregate, did not amount to improper comment. In view of the evidence presented at trial, these statements did not deprive Barcelo of a fair trial nor is his resulting conviction a "miscarriage of justice."

V.

Accordingly, the convictions of both defendants are AFFIRMED.

---

5. The prosecutor stated:

Well, he's got a name, ladies and gentlemen, but he has always been referred to in this court as a confidential informant, and in this day and age with your experience in life and your common sense, I think you all have a fairly clear concept of why a person—

\* \* \* \* \* \*

I think you may conclude based on reasonable inferences why a person who sets somebody up for a $50,000 drug deal with a Drug Enforcement agent—

\* \* \* \* \* \*

I would ask that you use your own common sense and best judgment in considering whether the United States would have legitimate purposes in not revealing in open court the name of an individual who is working as a confidential informant for the drug enforcement agency.